IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

JUL 17 2023

ARTHUR JOHNSTON
BY _____ DEPUTY

UNITED STATES OF AMERICA,          )
                                   )
              Plaintiff,           )
                                   )
v.                                 )     Crim No. 1:20-cr-00111-HSO-JCG-1
                                   )
EDDIE OBRIAN REEVES,               )
                                   )
              Defendant.           )

## MOTION FOR COMPASSIONATE RELEASE/REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A) AND FIRST STEP ACT OF 2018

COMES Defendant, EDDIE OBRIAN REEVES ("Reeves"), appearing *pro se,* and in support of this memorandum would show as follows:

### I. JURISDICTION

The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582. The scope of a proceeding under 18 U.S.C. § 3582(c)(2) in cases like this one is extremely limited. *Dillon v. United States*, 130 S.Ct. 2683, 2687(2010). It is black-letter law that a federal court generally "may not modify a term of imprisonment once it has been imposed." *Id.* However, Congress has allowed an exception to that rule "in the case of a defendant who has been sentenced to a term of imprisonment

1

based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); see also, *Freeman v. United States*, 131 S.Ct. 2685 (2011) (reciting standard for sentence modifications). Such defendants are entitled to move for retroactive modification of their sentences. *Dillon*, 130 S.Ct. at 2690–91.

## II. **PROCEDURAL HISTORY**

On November 17, 2020, a grand jury sitting in the United States District Court for the Southern District of Mississippi, Southern Division, returned a two (2) count Indictment charging Reeves. See Doc. 18.[1] Count 1 charged Reeves with Aiding and Abetting to Possess with Intent to Distribute 5 Grams or More of Methamphetamine in violation of 21 U.S.C. §§ 841 (a)(1), (b)(1)(B), and 18 U.S.C. § 2. *Id.* Count 2 charged Reeves with Possession with Intent to Distribute 5 Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 841 (a)(1), (b)(1)(B), and 18 U.S.C. § 2. *Id.* The Indictment also contained a Notice of Intent to Seek Criminal Forfeiture Allegation pursuant to 21 U.S.C. § 853. *Id.*

On April 29, 2021, a Change of Plea Hearing was held before District Judge Halil S. Ozerden. No Doc. Entry. Reeves pleaded guilty as to Count 1 of the Indictment, pursuant to a written Plea Agreement. See Doc. 35.

---

[1] "Doc." refers to the Docket Report in the United States District Court for the Southern District of Mississippi, Southern Division, in Criminal No. 1:20-cr-00111-HSO-JCG-1, which is immediately followed by the Docket Entry Number.

On July 29, 2021, a Sentencing Hearing was held before District Judge Halil S. Ozerden. No Doc. Entry. Reeves was sentenced to a term of 87 months' imprisonment, followed by 5 years of Supervised Release, $3,500 Fine, and a Mandatory Special Assessment Fee of $100. Also, Count 2 of the Indictment was dismissed on motion by the Government. See Doc. 248. No direct appeal was filed in this case.

On December 6, 2021, Reeves filed a Motion for Compassionate Release. See Doc. 43. In support of his request for release, Reeves cited his preexisting medical conditions and his body mass index, which place him at higher risk during COVID-19 pandemic, as well as the need to care for his chronically ill, seven-year-old son who has now been diagnosed with a rare genetic disorder. Reeves also argued that the relevant sentencing factors weigh in favor of his release. Subsequently, the Court considered significant the very serious nature of Reeves's offense of conviction and the relatively short length of time he has served. Considering the totality of the record before it, the Court found that releasing Reeves from incarceration at this time would not reflect the gravity of his offense, protect the public, or afford adequate deterrence. See 18 U.S.C. § 3553(a). The Court seen Reeves' Motion was not well taken and further denied on February 25, 2022. See Doc. 54.

### III. DISCUSSION

As a preliminary matter, respectfully requests that this Court be mindful that *pro*

3

*se* complaints are to be held "to less stringent standards than formal pleadings drafted by lawyers," and should therefore be liberally construed. See *Rogers v. Boatright*, 709 F.3d 403 (5th Cir. 2013); *Estelle v. Gamble*, 429 U.S. 97 (1976) (same); and *Haines v. Kerner*, 404 U.S. 519 (1972) (same).

### A.   Federal Courts Have the Jurisdiction and Power to Reduce An Existing Sentence

This Court has the power to adjust Reeves' sentence. District courts no longer need a motion from the Bureau of Prisons to resentence a federal prisoner under the compassionate release provisions of 18 U.S.C. §3582(c)(1)(A)(i). A district court may now resentence if the inmate files a motion after exhausting administrative remedies. The reasons that can justify resentencing are not limited to medical, age, or family circumstances. A district court may resentence if the inmate demonstrates extraordinary and compelling reasons for a sentence reduction. Such reasons are present in this case.

### 1.   Historical Framework

Congress first enacted the compassionate release provisions in 18 U.S.C. §3582 as part of the Comprehensive Crime Control Act of 1984. That legislation provided that a district court could modify a final term of imprisonment when extraordinary and compelling reasons warrant such a reduction. 18 U.S.C. §3582(c)(1)(A)(i). In 1984, this provision was conditioned on the Bureau of Prisons (BOP) filing a motion in the

sentencing court. Absent a motion by the BOP, a sentencing court had no jurisdiction to modify an inmate's sentence. Congress did not define what constitutes an "extraordinary and compelling reason," but the legislative history recognized that the statute was intended, in part, to abolish and replace federal parole. Rather than have the parole board review for rehabilitation only, Congress authorized review for changed circumstances:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term on imprisonment. S. Rep. No. 98-225 at 55-56 (1983).

18 U.S.C. § 3582 acts as a "safety valve" for the "modification of sentences" that would previously have been addressed through the former parole system. *Id.* at 121. The provision was intended "to assure the availability of specific review and reduction of a term of imprisonment for "extraordinary and compelling reasons" and [would allow courts] to respond to changes in the guidelines." *Id.* Thus, sentencing courts have the power to modify sentences for extraordinary and compelling reasons.

2.    Section 3582(c)(1)(A) is Not Limited To Medical, Elderly or Childcare Circumstances

Congress initially delegated the responsibility for determining what constitutes

"extraordinary and compelling reasons" to the United States Sentencing Commission. 28 U.S.C. § 994(t) ("The Commission...shall describe what should be considered "extraordinary and compelling reasons" for sentence reduction, including the criteria to be applied and a list of specific examples." Congress provided one limitation to that authority: "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Rehabilitation could, however, be considered with other reasons to justify a reduction.

In 2007, the Sentencing Commission defined "extraordinary and compelling reasons" as follows:

(A)    Extraordinary and Compelling Reasons - Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the following circumstances:

(i)    The defendant is suffering from a terminal illness.
(ii)    The defendant is suffering from a permanent physical or medical condition, or is experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self care within the environment of a correctional facility and for which conventional treatment promises no substantial improvement.

(iii)    The death or incapacitation of the defendant's only family member capable of caring for the defendant's minor child or minor children.
(iv)    As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason for purposes of subdivision (1)(A). USSG

6

§1B1.13, Application Note 1.

As we will see, with the passage of The First Step Act, subparagraph (iv) is no longer limited by what the BOP decides is extraordinary and compelling.

Historically, the BOP rarely filed motions under § 3582(c)(1)(A), even when the inmates met the objective criteria for modification. See U.S. Dep't of Justice Office of the Inspector General, The Federal Bureau of Prisons Compassionate Release Program (Apr. 2013). The Office of the Inspector General also found that the BOP failed to provide adequate guidance to staff on the criteria for compassionate release, failed to set time lines for review of compassionate release requests, failed to create formal procedures for informing prisoners about compassionate release, and failed to generate a system for tracking compassionate release requests. *Id.* at i-iv. Congress heard those complaints and in late 2018 enacted The First Step Act.

3.    The First Step Act

The First Step Act, P.L. 115-391, 132 Stat. 5194, at (Dec. 21, 2018), among other things, transformed the process for compassionate release. *Id.* at § 603. Now, instead of depending upon the BOP to determine an inmate's eligibility for extraordinary and compelling reasons and the filing of a motion by the BOP, a court can resentence "upon motion of the defendant." A defendant can file an appropriate motion if the he or she has exhausted all administrative remedies or "the lapse of 30

7

days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. §3582(c)(1)(A). The purpose and effect of this provision is to give federal courts the ability to hear and resentence a defendant even in the absence of a BOP motion. Congress labeled this change "Increasing the Use and Transparency of Compassionate Release." 164 Cong. Rec. H10346, H10358 (2018). Senator Cardin noted in the record that the bill "expands compassionate release under the Second Chance Act and expedites compassionate release applications." 164 Cong. R. 199 at S7774 (Dec. 18, 2018). In the House, Representative Nadler noted that the First Step Act includes "a number of very positive changes, such as … improving application of compassionate release, and providing other measures to improve the welfare of federal inmates." 164 Cong. R. H10346-04 (Dec. 20, 2018).

Once an inmate has pursued administrative remedies through the BOP, upon his or her motion, the sentencing court has jurisdiction and the authority to reduce a sentence if it finds "extraordinary and compelling reasons" to warrant a reduction. Judicial authority is no longer limited to cases that have the approval of the BOP.

### 4.    Reeves Has Exhausted Administrative Remedies

A motion by an inmate can be filed in the district court after (1) the inmate has made the request to the Warden, and (2) either the request was denied or 30 days have lapsed from the receipt of the request, whichever is sooner. First Step Act of 2018,

section 803(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018).

Reeves has filed a request for compassionate release to the Warden at USP Atlanta, but he has not received a response yet. Because 30 days have lapsed from the receipt of the request and the BOP failed to file a motion on Reeves's behalf, exhaustion of administrative remedies is not an issue in this case. See 18 U.S.C. § 3582(c)(1)(A).

## B.    Reeves's Current Conditions of Confinement and Health Conditions

Reeves, age 41, suffers from incurable, progressive disease, from which Reeves will never recover, to wit: Hypertension. He also suffers from Obesity. See Exhibit 1.

**Facts:**

***Hypertension***. Hypertension is another name for high blood pressure. It can lead to severe health complications and increase the risk of heart disease, stroke, and sometimes death.

Blood pressure is the force that a person's blood exerts against the walls of their blood vessels. This pressure depends on the resistance of the blood vessels and how hard the heart has to work.
Hypertension is a primary risk factor for cardiovascular disease, including stroke, heart attack, heart failure, and aneurysm. Keeping blood pressure under control is vital for preserving health and reducing the risk of these dangerous conditions.

***Obesity.*** It is a term that, well, carries a lot of weight, because of varying cultural norms and stigmas about body size and shape.

The World Health Organization's (WHO) definition of obesity: abnormal or

excessive fat accumulation in the body that may pose a risk to your health.

Obesity is a chronic disease, and for many people can be progressive. Some people may be able to shift to lower weights, and yet many people many struggle despite mainstream interventions like lifestyle changes, and medical and surgical approaches.

***COVID-19***. COVID-19 is the disease caused by the new coronavirus that emerged in China in December 2019. COVID-19 symptoms include cough, fever or chills, shortness of breath or difficulty breathing, muscle or body aches, sore throat, new loss of taste or smell, diarrhea, headache, new fatigue, nausea or vomiting and congestion or runny nose. COVID-19 can be severe, and some cases have caused death.

New York, California and Ohio were among the first to release incarcerated people. Other states have followed, saying it is the only way to protect prisoners, correctional workers, their families and the broader community.

Jails and prisons often lack basic hygiene products, have minimal health care services and are overcrowded. Social distancing is nearly impossible except in solitary confinement, but that poses its own dangers to mental and physical health.

While there is absolutely no evidence to support that any person is more or less likely to be infected [with COVID-19] based on existing medical conditions, Reeves' argues that, first, prisoners experience exponentially higher rates of COVID-19 than the general population. As of June 2020, "[t]he COVID-19 case rate for prisoners was 5.5 times higher than the US population case rate."[2] Second, and more critically, older

---

[2]

Brendan Saloner, *et al.*, *COVID-19 Cases and Deaths in Federal and State Prisons*, J. of the

individuals and individuals with chronic medical conditions are at greater risk of hospitalization and death from COVID-19. For example, the CDC reports that persons aged 40 to 49 are 15 times more likely to be hospitalized and 130 times more likely to die from COVID-19 compared to persons aged 18 to 29 and younger.[3] In other words, Reeves does not only contend that his health conditions increase his risk of getting COVID-19; but also, he contends that those conditions greatly increase the risk that, if contracted, his COVID-19 infection would be severe or even deadly.

Additionally, according to WebMD, "high blood pressure is the most commonly shared pre-existing condition among those hospitalized. Having hypertension can almost double the risk of severe COVID-19 illness or death. Other health conditions include cancer, diabetes, or lung disease. Why people with high blood pressure may be at higher risk for coronavirus is not known. One possibility could be in the relationship between hypertension and the immune system. Long-term health conditions and aging weaken your immune system so it's less able to fight off the virus. Almost two-thirds of people over 60 have high blood pressure.

Another possibility is that the higher risk comes not from high blood pressure itself, but

---

Am. Med. Ass'n (July 8, 2020), https://jamanetwork.com/journals/jama/fullarticle/2768249.

[3]  *Hospitalizations & Death by Age*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html (last updated May 14, 2021).

from certain drugs used to treat it– ACE inhibitors and angiotensin receptor blockers
(ARBs). This theory may come from research that suggests these types of medications
weaken the body's immune cells."

https://www.webmd.com/covid/coronavirus-high-blood-pressure#:~:text=High%20b
lood%20pressure%20is%20the,%2C%20diabetes%2C%20or%20lung%20disease.

Hence, it is appropriate for Reeves to be released into an environment where he
and his loved ones can control and direct his medical care. It is important for all of us
to remember that convicted criminals are sent to prison as punishment—not for
punishment. People who are severely debilitated or are in the midst of dying are usually
no longer a threat to society, and there is not a compelling social advantage to keeping
them in prison. Given the highly infectious nature of COVID-19, the inability in a
facility like USP to practice any of the hygienic and social distancing techniques that
the Center for Disease Control has put in place to prevent rapid transmission, and the
fact that Reeves suffers from hypertension and obesity that have already been identified
as "high risk," this Court should find that Reeves' legitimate medical risk is a
sufficiently extraordinary and compelling basis for granting compassionate release.

### BOP Amid Covid-19

One consequence of overcrowding is that prison officials have a difficult time
providing adequate health care.

In 2011 the U.S. Supreme Court ruled that overcrowding undermined health care in California's prisons, causing avoidable deaths. The justices upheld a lower court's finding that this caused an "unconscionable degree of suffering" in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.

Amid a worldwide pandemic, such conditions are treacherous. Some of the worst COVID-19 outbreaks in U.S. prisons and jails are in places – like Louisiana and Chicago – whose prison health systems have been ruled unconstitutionally inadequate. Criminologists and advocates say many more people should be released from jails and prison, even some convicted of violent crimes if they have underlying health conditions.

The decision to release prisoners cannot be made lightly. But arguments against it discount a reality recognized over two centuries ago: The health of prisoners and communities are inextricably linked. Coronavirus confirms that prison walls do not, in fact, separate the welfare of those on the inside from those on the outside.

C. **Reeves Has "Extraordinary and Compelling Reasons" For Compassionate Release**

The principles of Compassionate Release allow for Reeves' early release. As discussed above, the principles for release are no longer limited to BOP guidelines; federal courts have the power to determine what constitutes extraordinary and compelling circumstances.

1.    Drug Weight Calculation

Here, Reeves urges the Court to assess *United States v. Stanback*, 377 F. Supp. 3d 618 (W.D. Va. 2019). In *Stanback*, Kelly George Stanback, represented by counsel, filed a motion to reduce his sentence pursuant to Section 404(b) of the First Step Act of 2018. ECF No. 1449. He asks the court to reduce his current sentence of 622 months to time served. The government asserts that Stanback is ineligible for consideration of a reduction in his sentence, and in the alternative, that if he is eligible for consideration, a further reduction of his sentence is not warranted. The government suggests that the only relief to which Stanback is entitled is a reduction in his term of supervised release from 5 years to 4 years. For the reasons set forth below, the court granted Stanback's request and modified his sentence to time served, to be followed by a 4-year term of supervised release.

The drug weight is an element of the offense and that any fact that increases a mandatory minimum penalty is an element that must be charged in an indictment and proved to a jury beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). Under those two cases, if Stanback were sentenced today, his sentence would be based on distributing 5 grams or more of cocaine base, and not 3,000 kg to 10,000 kg of Marijuana equivalent.

14

In *Apprendi*, the Supreme Court held that the Sixth Amendment to the Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. In *Alleyne*, the Court applied *Apprendi* to the federal mandatory minimum and maximum sentencing scheme and held that because mandatory minimum sentences increase the penalty for a crime, any fact that increases the mandatory minimum is an element of the crime that must be submitted to the jury. *Id.* at 116, 133 S.Ct. 2151 (overruling *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) ).

Neither *Apprendi* nor *Alleyne* are retroactively applicable on collateral review. See *United States v. Sanders*, 247 F.3d 139, 146 (4th Cir. 2001) (joining other circuits in finding that *Apprendi* does not apply retroactively to cases on collateral review); and *United States v. Stewart*, 540 Fed.Appx. 171 (4th Cir. 2013) (*per curiam*) (noting that *Alleyne* has not been made retroactively applicable to cases on collateral review). However, for a period of time after *Apprendi* was decided, including before passage of the Fair Sentencing Act in 2010, the jury ordinarily made a finding regarding the threshold penalty, but the court could and did impose statutory-minimum penalties regardless of any jury finding. That practice was authorized by *Harris*, and *Alleyne* did not overrule *Harris* until three years later, and three years after the Fair Sentencing Act

was enacted. Nonetheless, Congress, when drafting the First Step Act in 2018, surely did not intend for courts to disregard the last six years of Supreme Court federal sentencing jurisprudence and this court declines to do so.

*Alleyne* made clear that in order to preserve a defendant's Sixth Amendment right to a jury trial, any fact that increases the statutory mandatory minimum sentence is an element of the crime which must be submitted to the jury. *Alleyne*, 570 U.S. at 116, 133 S.Ct. 2151. Under *Alleyne*, this court is not free to ignore that finding and impose a penalty based on the 5 grams or more of actual methamphetamine as referenced in the Indictment. Thus, although *Apprendi* and *Alleyne* are not retroactively applicable on collateral review, this court joins other courts in finding that their holdings are applicable in the context of the First Step Act. See *United States v. Simons*, No. 07-CR-00874, 375 F.Supp.3d 379, 487, 2019 WL 1760840 at *6 (E.D.N.Y. Apr. 22, 2019) (citing *Alleyne* and finding that statutory penalties are determined by facts submitted to a grand jury, trial jury, or established by a guilty plea while findings by a judge may be used to determine a sentence within the statutory penalties and cannot change "the mandatory minimum sentence now applicable"); *United States v. Dodd*, No. 3:03-CR-18-3, 372 F.Supp.3d 795, 2019 WL 1529516 (S.D. Iowa, Apr. 9, 2019) (finding in a First Step Act case that "[b]oth *Apprendi* and *Alleyne* are binding on this Court for sentencings held today."); *United States v. Davis*,

16

No. 07-CR-245(S)(1), 2019 WL 1054554 (W.D.N.Y. Mar. 6, 2019), appeal docketed, No. 19-874 (2nd Cir. Apr. 5, 2019) ("[I]t is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act."); see also *United States v. Laguerre*, No. 5:02-CR-30098-3, 2019 WL 861417 (W.D. Va. Feb. 22, 2019) (relying without discussion on charged drug weight rather than PSR weight to find defendant eligible for relief).

In this case, Reeves pleaded guilty as to Count 1 of the Indictment: Aiding and Abetting to Possess with Intent to Distribute 5 Grams or More of Methamphetamine, however, he was held accountable to 5 grams or more of methamphetamine resulting to an 87-month sentence.

In sum, applying the *Apprendi* and *Alleyne* logic to this case, Reeves's Base Offense Level would now be 14. See also 2018 Sentencing Guidelines, indicating that "At least 5 G but less than 10 G of Methamphetamine," calls for a Base Offense Level of 14, pursuant USSG § 2D1.1(c)(13). Applying the same enhancements and reduction, Reeves' Total Offense Level would now be 17 in Criminal History Category of III. Reeves was charged with  establishing an advisory Guidelines range of 30 to 37 months. Applying the same consideration, Reeves should be sentenced to a term of 30 months' imprisonment.

      2.    <u>Compassionate Release Objective Criteria Under the First</u>

Step Act

The criteria for determining whether a prisoner has an "extraordinary and compelling reason" for a sentence reduction are sometimes broader under the Sentencing Guidelines than under the BOP Program Statement. Prisoners seeking compassionate release and/or filing motions should consult USSG § 1B1.13, in addition to the BOP Program Statement 5050.50 for guidance on what reasons are considered by courts to be "extraordinary and compelling." The differences are outline below.

- **Terminal Medical Condition:**

  o  The prisoner has been diagnosed with a terminal, incurable disease with a life expectancy of 18 months; or

  o  The prisoner has a disease or condition with an end-of-life trajectory, meaning that the disease or condition will lead to death. A specific prediction of time left to live is not necessary.

- **Debilitated Medical Condition:**

  o  BOP: The prisoner has an incurable, progressive illness or has suffered a debilitating injury without hope of recovery. BOP will consider a compassionate release if the prisoner is
     -  Completely disabled so they cannot carry on any self-care and is totally confined to a bed or chair; or
     -  Able to do only limited self-care and is confined for 50 percent of waking hours to a bed or chair.

  o  Sentencing Commission: The prisoner's ability to provide self-care in the prison is substantially diminished and recovery is not expected because the prisoner is
     -  Suffering from a serious physical or medical condition;
     -  Suffering from a serious functional or cognitive impairment;

18

or
- Experiencing deteriorating physical or mental health due to age.

- **New Law Elderly Prisoners are those sentenced for an offense that occurred after November 1, 1987, who are**

  o   70 years old or older; and
  o   Have served 30 years of the sentence.

- **Elderly Prisoners (with Medical Conditions)**

  o   BOP
  - 65 years old or older;
  - Suffer from chronic or serious medical condition related to age;
  - Are experiencing deteriorating physical or mental health that substantially diminishes their ability to function in prison;
  - Conventional treatment promises no substantial improvement; and
  - Have served at least 50 percent of their sentence.

  o   Sentencing Commission
  - 65 years old;
  - Are experiencing serious physical or mental health deterioration due to age; and
  - Have served at least the lesser of 10 years or 75 percent of their sentence.

- **Other Elderly Prisoners (BOP only)**

  o   65 years old or older; and
  o   Have served the greater of 10 years of 75 percent of their sentence.

- **Family Circumstances**

  o   Death or incapacitation of the family member or caregiver of the

prisoner's minor children (BOP adds that to be eligible, the prisoner must be the only family member capable of caring for the children); or

o    Incapacitation of the prisoner's spouse or registered partner
- •    BOP: "Incapacitation" means the spouse or partner has
  - -    Suffered a serious injury or debilitating illness and is completely disabled so as to be unable to carry on any selfcare and is totally confined to a bed or chair; or
  - -    Has severe cognitive defect such as Alzheimer's.
- •    BOP: The prisoner must be the only available family caregiver.

i.    <u>Requests Based on Non-Medical Circumstances – Incapacitation of the Prisoner's Children Due to Health Issues</u>

In this case, Reeves requests for Reduction in Sentence ("RIS") because his children have a blood disease. Due to their condition, they require a full-time attention which their mother could not provide and she could not commit herself to take care of Reeves' children incessantly.

**Facts:**

Blood disorders are conditions that keep parts of your blood from doing their jobs:

- •    Your red blood cells carry oxygen throughout your body.
- •    Your white blood cells help protect your body from infection.
- •    Your platelets help your blood to clot so you don't bleed more than normal.
- •    Blood disorders may be cancerous or noncancerous.

You may inherit a noncancerous blood disorder or develop one because you

have an underlying condition that affects your blood.

Some blood disorders may not cause symptoms or require treatment. Others are chronic (lifelong) illnesses that require treatment but typically won't affect how long you'll live. Other blood disorders are serious illnesses that can be life-threatening.

Healthcare providers treat blood disorders by managing symptoms and treating any underlying conditions.

In general, noncancerous blood disorders are conditions that affect your blood cells and platelets and cause issues that may:

- Increase your risk of blood clots. Factor V Leiden, an inherited blood disorder, is an example of a blood clotting disorder.
- Make you bleed more than normal because your blood doesn't form blood clots. Inherited hemophilia is an example of a bleeding disorder.

Reeves' 9-year old child had undergone heart surgery and now recovering however, his 5-year old child, had the same illness and had to undergo the same medical procedure and only Reeves could attend and provide care to his children. Reeves prays for this Court's leniency to grant him an instant compassionate release.

ii.    The First Step Act Gives Prisoners the Right to Go to Court

The most significant change to compassionate release is that the Act provides prisoners the power to file a motion for compassionate release if they can demonstrate they have tried and failed to convince the BOP to do so for them. Before passage of the First Step Act a denial by the BOP was not appealable.

**Prisoners now have the right to file a motion** under 18 U.S.C. § 3582(c)(1)(A)(i) directly with the court under certain circumstances:

- Prisoners may file a motion after the earlier of
  - o having "fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion. . ." or
  - o 30 days after the date the warden received a request for compassionate release from the prisoner.

- A prisoner **exhausts administrative rights** when one of two things happens:
  - o The Central Office of the BOP rejects a warden's recommendation that the BOP file a compassionate release motion, or
  - o The warden refuses to recommend the BOP file a compassionate release motion and the prisoner appeals the denial using theBOP's Administrative Remedy Program.

    iii.    <u>Reeves is Eligible for a Reduced Sentence</u>

In this case, Reeves' children suffers from incurable, progressive disease, from which they will possibly not recover, at a very young age. Reeves' children are now incapacitated with blood disease and a possible heart surgery. Their condition affect their capacity to function and unable to function without general supervision.

Because of the urgency imposed by such unforseen event – incapacitation of Reeves' children to provide the requisite elevated care to themselves, it is important that the sentencing court decides instantaneously whether to reduce Reeves' sentence after considering the factors in section 3553(a) and if it finds that "extraordinary and compelling reasons" warrant a reduction.

Reeves , currently housed at the USP Atlanta, in Atlanta, Georgia ("USP Atlanta"). He has no violent convictions prior to the instant offense. Accordingly, Reeves is not a threat to society. Because of the relatively limited risk of recidivism and the relatively limited potential danger to the community of his release, he was sentenced to 87 months' imprisonment, and his projected release is on September 13, 2026. Since his incarceration, in 2020, Reeves has FSA classes in the BOP. Generally, Reeves is well capable of working to support and provide for himself and his children. It is imperative that Reeves cares for his children, who longed to be with Reeves during these challenging times.

3.   <u>Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct</u>

We know that different judges sentence criminal defendants convicted of the same crimes to different sentences. Maybe there are good reasons for that, and maybe there are reasons we should value individualized sentencing. But it turns out that there are "significant disparities" in the way federal judges sentence defendants in financial fraud cases, at least according to Assistant Attorney General Lanny A. Breuer. Does that make sense? Should something be done?

Speaking at the American Lawyer/National Law Journal Summit in Washington, D.C., Breuer stated that "[w]ith increasing frequency, federal judges have been

sentencing fraud offenders – especially offenders involved in high-loss fraud cases – inconsistently." He added that "a defendant in one district may be sentenced to one or two years in prison for causing hundreds of millions of dollars in losses, while a defendant in another district is sentenced to 10 or 20 years in prison for causing much smaller losses."

Breuer said that the data "show that the district in which a person is sentenced can have a huge impact on how much time he or she spends in prison" and that "many prosecutors, defense lawyers, and judges agree that more and more, the length of a defendant's sentence depends primarily on the identity of the judge assigned to the case, and the district in which he or she is in."

Reeves is now, in effect, to be re-sentenced today, after the passage of the First Step Act; and the need to avoid unwarranted sentencing disparities is to be assessed at the time of his sentencing today relative to those comparable offenders who have been sentenced following the passage of the First Step Act based on the need to avoid unwarranted sentencing disparities, which expressly allowed for the possibility for a sentence reduction based on an individualized assessment of the § 3553(a) factors and other criteria.

Reeves essentially argues that the unwarranted sentencing disparity factor must be determined only with reference to those comparably situated defendant who was

sentenced at the time of Reeves' sentencing and those being sentenced today under a different sentencing structure. Reeves' sentence in 2020 is now disparate relative to Defendants who were sentenced after December 21, 2018.

Reeves urges this Court to consider the following compiled Compassionate Release grants based on Family Circumstances:

a.   *United States v. Payne*, 2020 WL 6334798, at *1 (W.D. Va. Oct. 29, 2020)
   • I find that the defendant's medical conditions and her need to facilitate cancer treatment for her minor daughter are extraordinary and compelling reasons to reduce her sentence. Also, her time served is sufficient to meet the goals of 18 U.S.C. § 3553(a) given the non-violent nature of the crime, her minimal criminal history, and low risk of recidivism. I will grant the Motion for Compassionate Release and reduce her sentence to time served.
   • 60 months, has served 32, release date June 2023
   • Type 2 diabetes, daughter's cancer treatment, obesity
   • FPC Alderson

b.   *United States v. Morrison*, 2020 WL 6806765, at *1 (D. Nev. Nov. 19, 2020)
   • FCI Dublin
   • 120 months for bank robberies, served about 7 years
   • Asthma is not enough, but family circumstances are
   • Children, 15 and 16, have medical conditions, current caregiver is 60-year-old mother with bad back

c.   *United States v. Gustafon*, 2020 WL 4877253, at *1 (W.D. Pa. Aug. 20, 2020)
   • Halfway house date is September, 2020, release date March 2021
   • 60 months

25

- "Recurrent respiratory issues and hypothyroidism," hepatitis B but asymptomatic
- FCI Jesup, "inability to receive medical treatment, exercise, proper diet, participate in productive programming activities as outlined in the First Step Act, receive visitation from loved ones, and otherwise function in a humane environment"
- Got counsel, also argued family circumstances, "family's destitution and the fact that his daughter no longer has a caregiver able to support her"
- Discusses issue exhaustion, added medical circumstance to family circumstance, concluding that "the Defendant has met the exhaustion requirements such that it may consider his motions in their entirety."
- Extensive discussion of hypothyroidism and hepatitis

Here, although those factors may fully support the substantial sentence originally imposed, in the current context of Reeves' children's sensitive medical condition, Reeves' believes compassionate release is appropriate at this time so he can live with his children as their primary caregiver and attend to all of their medical needs.

It is essential to also note that since Reeves' incarceration began, he has taken numerous steps to attempt to improve himself in "post-conviction rehabilitation." See Exhibit 1. Based on the combination of factors, Reeves' and his children's medical conditions, COVID-19 risk, as well the changing sentencing landscape justify granting compassionate release to Reeves.

Under 18 U.S.C. § 3582(c)(2), to modify Reeves' sentence, taking into account the advisory nature of the guidelines after *Booker* and the considerations set forth in 18

U.S.C. § 3553(a). The Court should find that a sentence of time served is sufficient, but not greater than necessary, and accounts for the sentencing factors the court must consider pursuant to 18 U.S.C. § 3553(a), specifically deterrence, protection of the public, and respect for the law.

## IV. CONCLUSION

For the above and foregoing reasons, Reeves prays this Court grant his Motion of Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018.

Respectfully submitted,

Dated: June 26, 2023

*Eddie OBrian Reeves*
EDDIE OBRIAN REEVES
REG. NO. 08416-043
USP ATLANTA
U.S. PENITENTIARY
P.O. BOX 150160
ATLANTA, GA 30315

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2023, I mailed a true and correct copy of the above and foregoing Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018 via U.S. Mail, postage prepaid, to Shundral Hobson Cole-Federal Gov, at United States Attorney's Office - Gulfport, 1575 20th Avenue, Gulfport, MS 3950.

*Eddie OBrian Reeves*
EDDIE OBRIAN REEVES

27